UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MICHAEL TIBBETT, | ) |
|                   Plaintiff, | ) |
| vs. | ) |
| IAN McPHERSON individually as Police Officer for the City of Seymour, Indiana, BRANDON WHITE individually as Police Officer for the City of Seymour, Indiana, CHADD ROGERS individually as Police Officer for the City of Seymour, Indiana, BRIAN MOORE individually as Police Officer for the City of Seymour, Indiana, WILLIAM ABBOTT in his official capacity as Chief of Police for the City of Seymour, CITY OF SEYMOUR, INDIANA, | ) 4:13-cv-00004-RLY-WGH |
|                   Defendants. | ) |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Michael Tibbett, filed suit against Officers Ian McPherson (hereinafter "McPherson"), Brandon White,[1] Brian Moore, Chadd Rogers, individually (collectively the "Officers"); William Abbott, in his official capacity as Chief of Police for the City of Seymour; and the City of Seymour, Indiana as the result of his arrest for disorderly conduct. Specifically, Tibbett brought suit under 42 U.S.C. § 1983 for unreasonable

---

[1] Tibbett agrees to dismiss the claims against Officers White and Rogers. These claims are therefore **DISMISSED with prejudice**.

1

seizure against the officers and under Indiana law for false arrest against Abbott and the City of Seymour.[2]  The Defendants move for summary judgment alleging probable cause existed for the arrest and qualified immunity protects them from suit.  For the reasons set forth below, the court **DENIES** the motion.

I.     Background[3]

On, Tuesday, September 13, 2011, Mike Tibbett and Mike Carillo were working in Columbus, Indiana on a roofing job.  (Deposition of Michael Tibbett ("Tibbett Dep.") 49, Filing No. 21-1).  After finishing for the day, the men drove twenty to thirty minutes to Tibbett's house in a subdivision known as Martha's Vineyard outside the city limits of Seymour, Indiana.  (*Id.*).  They arrived between 6:00 p.m. and 6:30 p.m.  (*Id.* 52; *see also* Testimony of Mindy Tibbett, Plaintiff's Exhibit B).  Carillo left to pick up his young daughter to bring her back to play with Tibbett's young son.  (Testimony of Mindy Tibbett, Plaintiff's Exhibit B).  When he returned, Tibbett, his wife, and Carillo went out in his driveway, had a couple of beers, and listened to Hank Williams Jr. playing from the factory stereo in Tibbett's truck around 7:30 pm.  According to the Tibbetts and Carillo, they were talking in normal voices while the music was playing.  (Testimony of Mindy Tibbett and Mike Carillo, Plaintiff's Exhibit B).

---

[2] Tibbett is not making a claim for excessive force under 42 U.S.C. § 1983 nor is he making a state law battery claim.  Additionally, Tibbett is not making any state law claims against the Officers.  Defendants ask the court to grant summary judgment on these claims because they are not being pursued.  Because, Paragraph 39 of the Complaint (Filing No. 1-1) alleges that the Officers used excessive force, and Tibbett has conceded that he is not pursuing that claim, the court **GRANTS** summary judgment on any excessive force or state law battery claim.

[3] Defendants object to the relevance of Plaintiff's criminal trial and result.  The court agrees that the result of the criminal trial is not relevant for the finding of probable cause.  However, it finds that the testimony in the trial is relevant to the reasonableness of the volume of the music and therefore the finding of probable cause.

Three houses down, Chad Whitteymore was outside grilling dinner and singing along to the Hank Williams' song. (Deposition of Chad Whitteymore 6-7, 13-14; Testimony of Chad Whitteymore, Plaintiff's Exhibit B). When he went inside, he could no longer hear the music. (*Id.*).

Across the street from Tibbett, Lyndsey Huddleston was home going over her daughters' lessons and waiting for her husband, Ryan, a Seymour city police officer, to get home from work. (Testimony of Lyndsey Huddleston, Plaintiff's Exhibit B). A few minutes after he arrived home, the Huddleston family left for dinner at Taco Bell. (*Id.*). They did not hear the music while in their home, but did once they left their home for dinner. (*Id.*; *see also* Testimony of Ryan Huddleston, Plaintiff's Exhibit B).

Next to the Huddlestons, and diagonal from the Tibbetts, live Ian and Shelley McPherson and their young daughter. (Tibbett Dep. 10-12, Ex. 2; Filing No. 21-1). McPherson, a Seymour city police officer, was off-duty that evening and upstairs watching television when he heard loud, thumping music. (Deposition of Ian McPherson ("McPherson Dep.") 88, 97; *see also* Testimony of Ian McPherson, Plaintiff's Exhibit A). According to McPherson, the music was louder than the television right in front of him. (Testimony of Ian McPherson, Plaintiff's Exhibit A). He looked outside and saw the music was coming from Tibbett's truck. (McPherson Dep. 88, 97). In order to resolve the situation, he contacted the Jackson County Sheriff's Office and then an Indiana State Police officer. (*Id.* 71, 97). Neither had officers in the area who could respond immediately. (*Id.*).

McPherson then decided to go over himself. According to Tibbett's wife, McPherson walked across the road with his hands in a fist. (*Id.*; *see also* Testimony of Mindy Tibbett, Plaintiff's Exhibit B). Ian stopped at the sidewalk in front of Tibbett's house and yelled, "Tibbett, turn that fucking shit down." (Tibbett Dep. 62-64). Tibbett responded "no." (*Id.*). Ian then yelled "Tibbett, you turn that fucking shit off right now or you're going to jail for disorderly conduct." (*Id.* 63, 65, 93). Tibbett again replied, "I'm not going to turn it down." (*Id.*). McPherson then left and walked back to his home where he called the Seymour City Police Department to request an officer and a supervisor because he was going to arrest Tibbett. (McPherson Dep. 96-97, 102). McPherson informed police that Tibbett was being defiant and had to go to jail. (Testimony of Corporal Brian Moore, Plaintiff's Exhibit A).

Meanwhile, Tibbett did not turn the music down. (Tibbett Dep. 66-69). Instead, he went inside to return a phone call to Roger Drew about siding for his house. (*Id.*). While on the phone, Drew, a state police detective, did not hear the music playing from Tibbett's truck. (Testimony of Roger Drew, Plaintiff's Exhibit B).

Outside, Corporal Moore arrived in his police vehicle. He had the dashboard camera on and a body mic located inside his upper right pocket. (Affidavit of Brian Moore ¶ 6). The court has watched and listened to the recordings and can hear the sound of the engine and a radio call being made. (Audio and Video of the Incident, Plaintiff's Exhibit E). It is not until the door is opened that music can be heard outside of Tibbett's residence. (*Id.*). Carillo turned the music off shortly after Officer Moore arrived. (*Id.*; *see also* Testimony of Mike Carillo, Plaintiff's Exhibit A). In doing this he noticed that the

4

volume level on the stereo indicated it was at a level six out of thirty. (*Id.*). Roger Drew could hear the police shouting at Tibbett to go outside, and instructed Tibbett to go outside. (Testimony of Roger Drew, Plaintiff's Exhibit B).

Once outside, Tibbett was arrested by Cpl. Moore. McPherson can be heard screaming and cussing. (Audio and Video of the Incident, Plaintiff's Exhibit B). In response to a comment made by Mindy Tibbett, McPherson says "You're damn right this is personal." (*Id.*). Cpl. Moore would later testify that it was arguable whether what he witnessed was enough for a misdemeanor, but that arresting Tibbett was not his decision to make – Ian McPherson had already made the decision. (Testimony of Cpl. Moore, Plaintiff's Exhibit A). Tibbett was later acquitted by a jury. (Plaintiff's Exhibit B).

**II.     Standard**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a motion for summary judgment, the burden rests with the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After the moving party demonstrates

the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *Id*. at 322-23. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87); *Celotex*, 477 U.S. at 322-24; *Anderson*, 477 U.S. at 249-52.

### III. Discussion

#### A. Wrongful Arrest/Unreasonable Seizure Claim

As a result of his arrest, Tibbett brings a claim for wrongful arrest (unreasonable seizure) against the Officers pursuant to Section 1983. An absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution is the existence of probable cause. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Probable cause to arrest exists when "the facts and circumstances within [an officer's] knowledge and of which [he has] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Jones by Jones v. Webb*, 45 F.3d 178, 181 (7th Cir. 1995) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The court evaluates probable cause "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." *Mahoney v.*

6

*Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992). Although the issue of probable cause in a damages suit, like this one, generally is a jury question, the court may conclude that probable cause existed as a matter of law "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir. 1994).

McPherson and Moore argue that they had probable cause to arrest Tibbett for violating Indiana Code 35-45-1-3, which states in relevant part:

> (a) A person who recklessly, knowingly, or intentionally:
> . . . .
>  (2) makes unreasonable noise and continues to do so after being asked to stop;

It is undisputed that Tibbett knowingly played the music, McPherson asked him to stop, and Tibbett continued playing the music. The issue before the court, thus, is whether the music constituted unreasonable noise under the statute. The Indiana Supreme Court defined unreasonable as "context-inappropriate volume." *Whittington v. Indiana*, 669 N.E.2d 1363, 1367 (Ind. 1996). Thus, the court must evaluate the context in which the music was played and the volume of it.

Tibbett played the music on a Tuesday between 7:30 and 8:00 p.m. It was beginning to get dark, and neighbors were eating dinner. The court finds that in this context, playing music in one's driveway at this time at an appropriate volume would be clearly reasonable. Nevertheless, the appropriateness would be dependent on the volume of the music.

7

The parties disagree over the volume of the music and where it could be heard from. The testimony from the neighbors is conflicting. McPherson claims to have heard it in the farthest part of his home; Huddleston, who lives closer, claims not to have heard it until he was outside. Additionally, the court disagrees with the Defendants that the recording from the body mic is indisputable evidence that the music was unreasonably loud. As Tibbett stressed, the music could not be heard over the roaring of the police car engine. (Plaintiff's Exhibit E). It could only be heard once Corporal Moore exited his vehicle. (*Id.*).

Because the underlying facts for a probable cause determination are in dispute, the court cannot find that, as a matter of law, probable cause existed in these circumstances. See *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) (finding that "[t]he probable cause determination must be made by a jury 'if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.'") (citing *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) (explaining that, "[i]f the underlying facts supporting the probable cause determination are not in dispute, the court can decide whether probable cause exists")).

### B. Qualified Immunity

Officers McPherson and Moore argue that they are entitled to qualified immunity even if the court finds that probable cause did not exist. Qualified immunity protects those officers who make a reasonable error in determining whether there is probable cause to arrest an individual. *Anderson v. Creighton*, 483 U.S. 635, 643 (1987); *Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir. 2007). The Supreme Court has articulated a two-

8

part test for qualified immunity: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (*overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the *Saucier* procedure "need not be followed in any particular sequence.")). Although qualified immunity is an affirmative defense, once the defense is raised, it becomes the plaintiff's burden to defeat it. *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007).

The Seventh Circuit grants qualified immunity to officers when "the probable cause determination [] was sufficiently close that an officer reasonably could have believed that probable cause existed, even if that belief ultimately was mistaken." 539 F.3d 629, 640 (7th Cir. 2008) (*citing Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987) ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present.")); *see also Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1014 (7th Cir. 2006) ("[E]ven if probable cause is lacking with respect to an arrest, the arresting officer is entitled to immunity so long as his belief that he had probable cause was objectively reasonable."). Thus, the court must determine if, under the facts most favorable to Tibbett, the determination was sufficiently close.

To show probable cause, Defendants cite to several cases where the Indiana Court of Appeals upheld convictions for disorderly conduct when the noise was loud enough to

9

cause neighbors to notice.[4]   Defendant appears to be asking the court to adopt a standard that if the noise is loud enough to be heard by the neighbors, it is unreasonable. However, the cases cited by Defendants more properly stand for the proposition that "Indiana courts have repeatedly held that loud noises that interfere with a police investigation are grounds for a charge of disorderly conduct."  See *Lenig v. Sponaugle,* No. 2-11-cv-186-TLS, 2013 WL 2420864, *5 (N.D. Ind. 2013) (granting summary judgment on false arrest claim when at 3 a.m. plaintiff talked loudly over 60-70 feet during police search for a criminal suspect).   Here, the context was remarkably different from a police investigation.  Second, Defendants' argument ignores the requirements of the disorderly conduct statute – the noise must be context-inappropriate.

Tibbett relies on *Pourgoraishi* which found that there was no qualified immunity for an arrest when the claimant's version of events stated that he did not raise his voice, use profanity, or use an "offensive voice." *Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 762 (7th Cir. 2006) (finding that under these circumstances "it would be clear to a reasonable officer that it was unlawful to arrest Pourghoraishi for disorderly conduct."). Tibbett also relies on *Rooni v. Biser*, where the Seventh Circuit again found that officers were not entitled to qualified immunity when they arrested Rooni.  No.13-1511, 2014

---

[4] *See Martin v. State,* 908 N.E.2d 285, 289 (Ind. Ct. App. 2009) (tirade that could be heard 40 yards away in jail for a period of four hours was sufficient to sustain a conviction for disorderly conduct); *Yowler v. State,* 894 N.E.2d 1000, 1003 (Ind. Ct. App. 2008) (sustaining a conviction for disorderly conduct when defendant yelled so loud at the police who were serving her with a bar letter as to cause neighbors to come out of their homes); *Blackman v. State,* 868 N.E. 2d 579, 584 (Ind. Ct. App. 2007) (sustaining a conviction for disorderly conduct when defendant shouted at police officers who were making an arrest so loud that it caused neighbors to emerge from their house and from the backyards); *Hooks v. State,* 660 N.E.2d 1076, 1077 (Ind. Ct. App. 1996) (sustaining a conviction for disorderly conduct for shouting at police who were preparing to have his vehicle towed so loud that it could be heard across the street by neighbors).

WL 407475, * 5 (7th Cir. Feb. 4, 2014). According to Rooni's version of facts he did not raise his voice, and thus there was no probable cause to arrest him for disorderly conduct. *Id.* The court finds these cases are applicable here.

The court must "resist temptation to evaluate the relative veracity of each party's facts," and credit the facts most favorable to the non-movant. *See Pourghoraishi*, 449 F.3d at 761. "This is true even when . . . the allegations cause[] us to raise a brow." *Id.* Here, Tibbett's wife testified that "it was not loud. It was not unreasonably loud." The Tibbetts and Carillo testified that they were talking in normal voices with the music playing. In addition, the Huddlestons testified that you could not hear the music inside their home directly across the street from the Tibbetts' driveway. Further, Detective Roger Drew testified that he could not hear the music while on the phone with Tibbett, who was in his house, but could hear the police outside. Additionally, Carillo testified that the factory stereo system was set at a volume level of six out of thirty. These facts are those most favorable to Tibbett, and therefore, what the court must, at this stage, make its determination based upon.

Under these facts, the music was not loud enough to be unreasonable, and no officer could reasonably believe it was lawful to arrest Tibbett for disorderly conduct for simply playing music. Therefore, the court **DENIES** the Defendants Moore and McPherson's motion for summary judgment on the unreasonable seizure claim.

### C. Claim Against the City of Seymour and William Abbott

Tibbett brings claims of false arrest and false imprisonment against the City of Seymour and William Abbott, in his official capacity as Chief of Police for the City of

Seymour.[5]  Defendants first argue that the false arrest and false imprisonment claims should be defeated because there was probable cause for the arrest.  As discussed above, the court cannot find probable cause due to an issue of fact.  Therefore, this argument fails.  Next, Defendants argue that a reasonable mistake to probable cause also precludes these claims.  Again, as discussed above, under the facts most favorable to Tibbett, the officers did not make a reasonable mistake.  As such, the court **DENIES** the motion for summary judgment on these claims.

### IV.   Conclusion

The court finds that an issue of material fact exists regarding the volume of the music and thus whether it was unreasonable under the circumstances.  Therefore, the court cannot find that probable cause existed as a matter of law.  In addition, the court finds that under the facts most favorable to Tibbett, a reasonable officer could not have believed it was lawful to arrest Tibbett.  Therefore, the court declines to grant qualified immunity, and Defendants' Motion for Summary Judgment ([Filing No. 19](#)) is **DENIED**.

**SO ORDERED** this 11th day of March 2014.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

---

[5] Tibbett brings these claims under Indiana state law, not Section 1983.